IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00125-MR

| | |
|---|---|
| DEESHUN DADE, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>KACEY R. CARLINEO, )<br>)<br>      Defendant. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 40].

**I.    PROCEDURAL BACKGROUND**

On June 21, 2022, Plaintiff Deeshun Dade ("Plaintiff"), proceeding *pro se*, filed this action through a verified Complaint pursuant to 42 U.S.C. § 1983 against Defendant Kacey R. Carlineo, a correctional officer at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina, for the alleged used of excessive force on Plaintiff in violation of the Eighth Amendment. [Doc. 1]. Plaintiff alleged in his verified Complaint as follows. On May 13, 2022, while Defendant was escorting Plaintiff to the shower area and Plaintiff was handcuffed behind his back, Defendant pulled and

squeezed Plaintiff's arm; and applied force to stop Plaintiff from walking to the shower; and then forced Plaintiff against the metal bars and rammed his head against them. As Plaintiff and Defendant walked toward the staircase, Defendant tightened the handcuffs to harm Plaintiff; and then while they walked up the stairs, Defendant tried to push the Plaintiff up the stairs. At the top of the stairs Plaintiff began resisting out of fear of being assaulted whereupon Defendant pinned Plaintiff against a wall. Once they returned to Plaintiff's cell, Defendant pushed Plaintiff inside and rammed Plaintiff against the wall. As Defendant was leaving the cell, Plaintiff attempted to step through his handcuffs to bring them to the front of his body. When Defendant noticed what Plaintiff was doing Defendant wrestled with him and "mush[ed] & punch[ed] him." [Id. at 2-3]. Plaintiff has not alleged that he was injured as a result of this alleged use of force. [See Docs. 1, 1-3]. Plaintiff seeks monetary relief only.[1] [Doc. 1 at 4].

Plaintiff's Complaint passed initial review. [Doc. 9]. The Court entered a scheduling order setting the dispositive motions deadline as August 24, 2023. [Doc. 28]. After multiple extensions of this deadline, Defendant timely filed a motion for summary judgment on January 22, 2024. [Doc. 40;

---

[1] The Court previously denied Plaintiff's requests for injunctive relief. [Doc. 1 at 4; Doc. 9 at 6-9].

8/24/2023, 9/15/2023, 10/13/2023, 11/14/2023 & 12/14/2023 Text Orders]. Defendant argues that summary judgment should be granted because Defendant did not use excessive force on Plaintiff and because qualified immunity bars Plaintiff's claim against Defendant. [Doc. 41]. In support of his summary judgment motion, Defendant submitted a brief, his own Declaration, the North Carolina Department of Public Safety (NCDPS)[2] Use of Force Policy, and video footage of the incident.[3] [Docs. 41, 42-1 to 42-3; 1/29/2024 Docket Entry].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 44]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions,

---

[2] The North Carolina Department of Adult Corrections (NCDAC) replaced the NCDPS Division of Adult Corrections after Plaintiff filed his Complaint in this matter.

[3] Defendant moved to manually file the video recording of the incident. [Doc. 43]. On January 24, 2024, the Court granted Defendant's motion and ordered that Defendant make a copy of the video available to the Plaintiff for viewing at his correctional facility within 10 days of the Court's Order. [Doc. 45]. Defendant promptly filed the video footage, which the Court will hereinafter cite as Doc. 42-3. [1/29/2024 Docket Entry].

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))]. Plaintiff did not respond to Defendant's summary judgment motion, and he has not filed anything indicating that he did not have the opportunity to review the video footage of the incident as ordered.

In fact, Plaintiff has not filed anything with the Court for more than a year and appears to have abandoned this claim.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000).  The nonmoving party must present sufficient evidence

5

from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The Court is to consider a Verified Complaint of a prisoner as am affidavit on summary judgment "when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021). As noted, the Plaintiff's Complaint was signed under penalty of perjury. Under Goodman, therefore, the Court is to consider its evidentiary value on summary judgment. In this case, however, Defendant's forecast of evidence includes video footage of the alleged incident. [See Doc. 42-3]. This evidence plainly contradicts Plaintiff's allegations regarding the use of force. Because a plaintiff cannot defeat summary judgment by presenting evidence that is blatantly contradicted by the record as a whole, see Scott, 550 U.S. at 380, 127 S.Ct. at 1776, the Court cannot adopt Plaintiff's account of the incident as it is clearly refuted by the video evidence for the purpose of ruling on this motion.

Therefore, the forecast of evidence before the Court on this motion is as follows.

Defendant Karlineo has been employed with the NCDAC, formerly the NCDPS, as a correctional officer at Foothills since 2014. [Doc. 42-1 at ¶ 2: Karlineo Dec.]. On May 13, 2022, Defendant was working in the Upper E unit, D wing, and was assigned to escort inmates to and from their cells to

7

use the shower. [Id. at ¶¶ 5, 6]. At 7:04 a.m., Defendant retrieved Plaintiff from his cell in the Upper E unit. [Doc. 42-3]. Plaintiff was restrained behind his back and Defendant held the inside of Plaintiff's left arm. [Id.]. Shortly after leaving Plaintiff's cell and as they walked down the stairs toward the shower area, Plaintiff began walking more quickly such that Defendant had to lean over toward the Plaintiff to keep up with him. [Id.]. Defendant ordered Plaintiff to slow down. [Doc. 42-1 at ¶ 10]. As they reached the bottom of the stairs, Plaintiff increased his gait, pulling away from the Defendant. [Doc. 42-3]. Defendant again ordered Plaintiff to stop pulling away. [Doc. 42-1 at ¶ 11]. Defendant gently pulled Plaintiff back toward him, but Plaintiff persisted in walking more quickly, causing Plaintiff's left arm to be pulled further back and creating space between him and the Defendant. [Doc. 42-3]. As Plaintiff continued to pull away, Defendant secured him against the bars. [Id.; Doc. 42-1 at ¶ 12]. Defendant did not slam Plaintiff's head into the bars. [Id.; Doc. 42-1 at ¶ 13]. Defendant informed Plaintiff that he would not be allowed to shower and began walking Plaintiff back to his cell while holding Plaintiff's left arm with his left hand, and holding the back of Plaintiff's neck with his right hand. [Id.; Doc. 42-3]. Plaintiff resisted Defendant's hold on him, bending his head forward and then leaning and pulling away from the Defendant, and then resisted walking up the stairs. [Id.]. Defendant was

able to put his hand in Plaintiff's underarm area and push Plaintiff up the stairs. [Id.]. In the meantime, Officer Beth Bollinger had approached Defendant to assist and walked up the stairs behind him and the Plaintiff. [Id.; Doc. 42-1 at ¶ 16]. Once at the top of the stairs, Plaintiff pulled away from Defendant again, freeing himself from Defendant's grasp. Defendant quickly put Plaintiff against the wall next to Plaintiff's cell door to secure him. Plaintiff continued to resist. Defendant, with Officer Bollinger's assistance, was able to get Plaintiff inside his cell. [Id.; Doc. 42-1 at ¶¶ 17-19]. Plaintiff again pulled away from the Defendant, moved toward and stood on his bunk, and attempted to remove his handcuffs. [Id. at ¶ 20; Doc. 42-3]. Defendant attempted to secure Plaintiff, who remained standing on his bed, against the wall above the bed. [Doc. 42-3]. Sergeant Adkins and Officer Hatley, who had arrived in the meantime, entered the cell and assisted Defendant in securing the Plaintiff while Officer Bollinger stood in the doorway. [Doc. 42-1 at ¶ 21; Doc. 42-3]. Once Plaintiff was secured to the bed, Defendant and the other officers left the cell and secured the door. [Doc. 42-1 at ¶ 22; Doc. 42-3]. A medical assessment was performed and only a small abrasion to Plaintiff's right shoulder was noted. [Doc. 42-1 at ¶ 23]. The force used by Defendant was intended solely to regain control of the Plaintiff and was not intended to injure or otherwise harm the Plaintiff. [Id. at ¶ 26].

## IV. DISCUSSION

As an initial matter, the Court concludes that the Plaintiff has abandoned this claim by failing to respond to Defendant's motion. In fact, the Plaintiff has filed nothing with the Court since January 2023 [See Doc. 24]. A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011) (citing Mentch v. Eastern Sav. Bank, FSB, 949 F.Supp. 1236, 1246-47 (D. Md. 1997)).

In addition, the Defendant is entitled to summary judgement on this record. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because

prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

The video evidence here conclusively shows that Defendant Karlineo used only that force reasonably necessary to gain control of Plaintiff and restore order and did not apply force maliciously or sadistically to cause harm. This evidence shows Plaintiff repeatedly disobeying Defendant's

11

Case 1:22-cv-00125-MR   Document 46   Filed 03/18/24   Page 11 of 13

orders to slow down, repeatedly resisting Defendant's escort, resisting Defendant's efforts to get Plaintiff up the stairs, actively pulling away from the Defendant at the top of the stairs, and resisting Defendant's efforts to get him inside his cell. This evidence conclusively refutes Plaintiff's allegations in his Complaint that Defendant pulled and squeezed Plaintiff's arm, rammed Plaintiff's head into the wall or bars, tightened Plaintiff's handcuffs as they walked toward the staircase, or rushed back into Plaintiff's cell to wrestle with the Plaintiff.

As such, there is no forecast of evidence from which a reasonable jury could conclude that Defendant's use of force on Plaintiff violated the Eighth Amendment. Moreover, other than an abrasion on Plaintiff's shoulder, there is no forecast of evidence that Plaintiff suffered any injury from Defendant's use of force. As such, there is no genuine issue of material fact as to Plaintiff's excessive force claim, and it will be dismissed. Because the forecast of evidence does not support that a constitutional right was violated, Defendant would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 40] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: March 18, 2024

Martin Reidinger
Chief United States District Judge